# EXHIBIT A

| | |
|---|---|
| 1 | Jeffrey B. Isaacs, Esq., SBN 117104<br>William L. Seldeen, Esq. SBN 222388<br>Oren Rosenthal, Esq., SBN 243110<br>**ISAACS | FRIEDBERG LLP**<br>555 South Flower Street, Suite 4250<br>Los Angeles, California 90071<br>Telephone: (213) 929-5550/Facsimile: (213) 955-5794<br>Email: jisaacs@ifcounsel.com<br>         wseldeen@ifcounsel.com<br>         orosenthal@ifcounsel.com |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | David A. Kettel, Esq., SBN 125745<br>**THEODORA ORINGHER PC**<br>1840 Century Park East, Suite 500<br>Los Angeles, California 90067-2120<br>Telephone: (310) 557-2009/Facsimile: (310) 551-0283<br>Email: dkettel@tocounsel.com |
| 7 | |
| 8 | |
| 9 | |
| 10 | Attorneys for Claimants<br>Bradley Twynham and Mariel Twynham |

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>      vs.<br><br>REAL PROPERTY LOCATED IN BRENTWOOD, CALIFORNIA (TWYNHAM) and $13,271.07 SEIZED FROM PREMIER AMERICA CREDIT UNION ACCOUNT NUMBER XXXXXX5967,<br><br>             Defendants.<br><br>BRADLEY MARTIN LEWIS TWYNHAM AND MARIEL TWYNHAM,<br><br>             Titleholders and Claimants. | Case No. CV 15-6794-RGK-AJW<br><br>Hon. R. Gary Klausner<br><br>**REPLY IN SUPPORT OF CLAIMANTS BRADLEY TWYNHAM AND MARIEL TWYNHAM'S MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>[Concurrently filed with Claimants' Reply in Support of Request for Judicial Notice]<br><br>Action Filed:   Sep. 2, 2015<br>FAC Filed:     Nov. 23, 2015<br>SAC Filed:     Dec. 14, 2015<br>Trial Date:     Oct. 11, 2016<br><br>**Hearing**<br>Date:          March 14, 2016<br>Time:          9:00 a.m.<br>Courtroom:     Roybal Room 850 |

**REPLY IN SUPPORT OF CLAIMANTS' MOTION TO DISMISS SAC**

188871.7

# TABLE OF CONTENTS

**PAGE**

A. Introduction ...................................................................................................... 1

B. The Government Misstates the Applicable Pleading Standards ................. 1

    *1    The Government Must Allege Specific Facts – Conclusory or Implausible Allegations Do Not Suffice.* ................................................ 1

    *2.    The Court May Consider Documents Incorporated by Reference and Documents that Are Subject to Judicial Notice.* ............................. 3

C. The Government Has Not Alleged a Scheme to Defraud CSC ................... 3

    *1.    Mr. Pulier Signing the Purportedly False LOR is the Basis of the Alleged Scheme to Defraud CSC* ........................................................ 3

    *2.    None of the Representations in the LOR Were False.* ............................. 6

    *3.    CSC was Not Deprived of Money or Property.* ....................................... 6

D. The Government Has Failed to Allege that Any Representation in the LOR was Material ....................................................................................... 7

E. The Government Has Failed to Allege an Interstate Wiring in Furtherance of the Alleged Scheme to Defraud CSC ................................. 8

F. The Government Has Failed to Allege that Mr. Pulier Acted with Intent to Defraud CSC ............................................................................................... 8

G. The Government Has Failed to Allege the Elements of Transactional Money Laundering ............................................................................................. 9

H. Leave to Amend Would Be Futile and the Government Makes No Showing Otherwise ................................................................................... 10

I. Conclusion ........................................................................................................ 10

# TABLE OF AUTHORITIES

**PAGE(S)**

**FEDERAL CASES:**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................. 1, 2

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................. 1, 2

*Davis v. HSBC Bank Nevada*,
    691 F.3d 1152 (9th Cir. 2012) ......................................................................... 3

*Digby Adler Grp., LLC v. Mercedes-Benz U.S.A., LLC*,
    2015 WL 5138080 (N.D. Cal. 2015) ................................................................ 2

*Durland v. U.S.*,
    161 U.S. 306 (1896) ....................................................................................... 5

*Hammerschmidt v. U.S.*,
    265 U.S. 182 (1924) ....................................................................................... 4

*Lustiger v. U.S.*,
    386 F.2d 132 (9th Cir. 1967) .......................................................................... 5

*Matter of EDC, Inc.*,
    930 F.2d 1275 (7th Cir. 1991) ........................................................................ 5

*McNally v. U.S.*,
    483 U.S. 350 (1987) ............................................................................... 4, 5, 6

*Skilling v. U.S.*,
    561 U.S. 358 (2010) ....................................................................................... 4

*Sprewell v. Golden State Warriors*,
    266 F. 3d 979 (9th Cir. 2001) ......................................................................... 3

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
    802 F. Supp. 2d 1125 (C.D. Cal. 2011) .................................................. 2, 6, 7

*U.S. v. 630 Ardmore Drive*,
    178 F. Supp. 2d 572 (M.D.N.C. 2001) ............................................................ 1

*U.S. v. Aguilar*,
    782 F.3d 1101 (9th Cir. 2015) ........................................................................ 2

*U.S. v. Dowling*,
    739 F.2d 1445 (9th Cir. 1985) ........................................................................ 5

*U.S. v. Lew*,
    875 F.2d 219 (9th Cir. 1989) ...................................................................... 4, 6

*U.S. v. Milovanovic*,
    678 F.3d 713 (9th Cir. 2012) .......................................................................... 4

## TABLE OF AUTHORITIES (Cont.)

**PAGE(S)**

*U.S. v. One White Crystal Covered Bad Tour Glove & Other Michael Jackson Memorabilia*,
    2012 WL 8455336 (C.D. Cal. 2012) ........................................................ 1, 2, 3

*U.S. v. Rutgard*,
    116 F.3d 1270 (9th Cir. 1997) ................................................................... 9

*U.S. v. Rybicki*,
    354 F.3d 124 (2d Cir. 2003) ...................................................................... 4

*U.S. v. Woods*,
    335 F.3d 993 (9th Cir. 2003) ............................................................. 4, 5, 6

*U.S. v. Yagman*,
    502 F. Supp. 2d 1084 (C.D. Cal. 2007) ..................................................... 9

**FEDERAL STATUTES:**

18 U.S.C. § 1346 .............................................................................................. 5

18 U.S.C. § 1341 .............................................................................................. 5

18 U.S.C. § 1343 .............................................................................................. 5

**FEDERAL RULES:**

Fed. R. Civ. P. 12(b)(6) ................................................................................... 3

Fed. R. Civ. P. E(2)(a) ..................................................................................... 2

Fed. R. Civ. P. G(2)(f) ..................................................................................... 2

# REPLY IN SUPPORT OF CLAIMANTS' MOTION TO DISMISS

## A. Introduction.

Claimants have moved to dismiss the SAC for the government's failure to properly and sufficiently allege *any* of the elements of wire fraud and transactional money laundering, the offenses upon which the government's forfeiture claims are premised.[1]  In response, the government has filed a highly disingenuous opposition. As discussed below, the government misstates applicable legal standards; cites outdated and inapposite cases; ignores controlling legal precedent; mischaracterizes the allegations of its own complaint; and fails to address numerous dispositive arguments raised by Claimants, including that judicially noticeable documents show that the government's core allegations of fraud are factually untrue.

## B. The Government Misstates the Applicable Pleading Standards.

### 1. *The Government Must Allege Specific Facts –*
### *Conclusory or Implausible Allegations Do Not Suffice.*

Relying solely on a 2001 Middle District of North Carolina case that is no longer good law, the government contends that there "'appears to be a relaxation of the proof that the Government is required to demonstrate in response to a 12(b)(6) motion made at an earlier stage of a forfeiture proceeding.'"  Opp., p. 4, *quoting U.S. v. 630 Ardmore Drive*, 178 F. Supp. 2d 572, 580 (M.D.N.C. 2001).  This is not the correct legal standard by which this Court is to evaluate the sufficiency of the SAC.

*First*, the government simply ignores the Supreme Court's watershed decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Those cases establish basic pleading standards applicable to all civil complaints, including *in rem* forfeiture complaints.  *See U.S. v. One White Crystal Covered Bad Tour Glove & Other Michael Jackson Memorabilia*, 2012 WL 8455336,

---

[1] Abbreviations and shortened names used herein are the same as those used in Claimants' Motion to Dismiss.

at *2 (C.D. Cal. 2012) (Wu, J.) ("*One White Glove*").  Under *Twombly* and *Iqbal*, the SAC's allegations, at minimum, must be "plausible," and "conclusory [allegations] are not entitled to be assumed true." *Iqbal*, 556 U.S. at 664; *Twombly*, 550 U.S. at 555.[2]

***Second***, the government also ignores the plain language of Supplemental Rules E and G, which, as the Ninth Circuit recently stated, set "a higher standard than 'notice pleading' . . . ." *U.S. v. Aguilar*, 782 F.3d 1101, 1109 (9th Cir. 2015); *see also One White Glove*, 2012 WL 8455336, at *2 (applying "heightened pleading standard" to civil forfeiture complaint).  The Supplemental Rules require the government to allege "specific information," Supp. R. E(2)(a), and "detailed facts," Supp. R. G(2)(f), and its failure to plead "specific allegations" and "specific instances of criminal activity" are grounds for dismissal.  *See One White Glove*, 2012 WL 8455336, at *2.

***Third***, the government altogether ignores Claimants' contention that the requirements of Rule 9(b) to plead fraud with particularity apply to the SAC.  As a result, the government has "conceded the point." *Digby Adler Grp., LLC v. Mercedes-Benz U.S.A., LLC*, 2015 WL 5138080, at *2 (N.D. Cal. 2015); *see also Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) (Pfaelzer, J.) (the "failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue").

The law is clear: the government must allege specific facts in support of its forfeiture claims, and cannot rely upon conclusory and implausible allegations.  *See One White Glove*, 2012 WL 8455336, at *2.  As the Motion to Dismiss established, the SAC's allegations of wire fraud and transactional money laundering are nothing but conclusory and implausible, requiring that the SAC be dismissed.

---

[2] Amazingly, *all* of the 19 appellate and district court cases the government cites in its discussion of the governing pleading standards *pre-date* both *Twombly* and *Iqbal*.  *See* Opp., pp. 3-7.

- 2 -
**REPLY IN SUPPORT OF CLAIMANTS' MOTION TO DISMISS SAC**
188871.7

### 2. The Court May Consider Documents Incorporated by Reference and Documents that Are Subject to Judicial Notice.

In determining the sufficiency of a complaint, the Court may consider "matters which are properly judicially noticeable and documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *One White Glove*, 2012 WL 8455336, at *2 (internal quotation marks omitted). Moreover, the Court may assume that the contents of documents submitted with the Motion that the SAC incorporated by reference "are true for purposes of a motion to dismiss under Rule 12(b)(6)," *Davis v. HSBC Bank Nevada*, 691 F.3d 1152, 1160 (9th Cir. 2012), and "need not . . . accept as true allegations that contradict matters properly subject to judicial notice." *Sprewell v. Golden State Warriors*, 266 F. 3d 979, 988 (9th Cir. 2001).

In support of their Motion, Claimants asked the Court to take judicial notice of the actual Letter of Representation ("LOR"), CSC's SEC filings and other relevant documents. Dkt. 46. The government has not objected, or even responded, to Claimants' Request for Judicial Notice. Therefore, in considering the sufficiency of the SAC's allegations, the Court may consider the documents submitted by Claimants, and is *not* required to accept as true the government's allegations to the extent they are contradicted by those documents.

**C.  The Government Has Not Alleged a Scheme to Defraud CSC.**

### 1. Mr. Pulier Signing the Purportedly False LOR is the Basis of the Alleged Scheme to Defraud CSC.

As the SAC itself confirms, Mr. Pulier's signing of the allegedly false LOR on January 30, 2014 is the only possible fraudulent act alleged that the government contends was material to CSC making the earnout payment. SAC, ¶ 34. Moreover, the government confirmed this to be the case in discussions between counsel prior to the filing of the Motion to Dismiss. Rosenthal Decl., ¶¶ 17-19. In its portion of the parties' Rule 26(f) Joint Report, the government stated:

> The Second Amended Complaint alleges that ***based on certain misrepresentations*** from the founder of ServiceMesh, Inc. that ServiceMesh legitimately exceeded an agreed-upon earnout amount revenue floor, Computer Sciences Corporation disbursed $98,034,058.00 to ServiceMesh shareholders upon Computer Sciences Corporation's purchase of ServiceMesh . . . .

Dkt. 40, pp. 2-3 (emphasis added). When asked to identify the "certain misrepresentations" to which it was referring, the government confirmed the representations in the LOR "as the alleged misrepresentations that are the basis of the government's wire fraud theory." Rosenthal Decl., ¶¶ 19(a); Ex. 3.

The government now suggests that its "theory of wire fraud" is not limited to "only 'fraud by false statements.'" Opp., p. 7. But it does not identify any other fraudulent or deceitful acts as a basis for the alleged scheme to defraud. Moreover, the government's discussion of mail and wire fraud reveals a fundamental misunderstanding of the law in this area, ignoring almost 30 years of Supreme Court jurisprudence defining the bounds of a "scheme to defraud."

The courts have recognized two types of schemes to defraud: (1) schemes to deprive victims of honest services, and (2) schemes to deprive victims of money or property. *See Skilling v. U.S.*, 561 U.S. 358, 401-02 (2010); *McNally v. U.S.*, 483 U.S. 350, 356-60 (1987); *U.S. v. Milovanovic*, 678 F.3d 713, 720-21 (9th Cir. 2012); *U.S. v. Woods*, 335 F.3d 993, 997-98 (9th Cir. 2003); *U.S. v. Lew*, 875 F.2d 219, 221 (9th Cir. 1989).

As the Supreme Court recently held, honest services fraud is limited to bribes and kickbacks in violation of a public official or employee's fiduciary duty. *See Skilling*, 561 U.S. at 411; *Milovanovic*, 678 F.3d at 722; *U.S. v. Rybicki*, 354 F.3d 124, 146 (2d Cir. 2003).

In the second category of schemes, "the words 'to defraud' commonly refer 'to wronging one in his property rights by dishonest methods or schemes,'" *McNally*, 483 U.S. at 358, *quoting Hammerschmidt v. U.S.*, 265 U.S. 182, 188 (1924), such as false representations, false promises, deceitful statements of half-truths and the concealment of material facts in violation of a legal duty of disclosure. *See* 18 U.S.C.

1 §§ 1341, 1343; *McNally*, 483 U.S. at 357-58; *Durland v. U.S.*, 161 U.S. 306, 313
2 (1896); *Woods*, 335 F.3d at 999; *U.S. v. Dowling*, 739 F.2d 1445, 1449 (9th Cir.
3 1985). Moreover, "the intent must be to obtain money or property from the one who
4 is deceived[.]" *Lew*, 873 F.2d at 221.

5      Plainly, the SAC does not allege honest services fraud. There is no allegation
6 of a deprivation of honest services; no allegation of the required fiduciary duty or a
7 breach thereof; and no citation to the honest services statute, 18 U.S.C. § 1346.
8 Furthermore, the government has confirmed that it is not proceeding under this theory.
9 Rosenthal Decl., ¶ 19(b); Ex. 3.

10      Similarly, the SAC does not allege any false promises or deceitful statements of
11 half-truths. Nor does it allege the concealment of material facts. It does not allege a
12 duty to disclose or the nondisclosure of material information. In fact, the word
13 "concealment" appears nowhere in the SAC.

14      Further, the government's reliance on *Woods* to expand the scope of "schemes
15 to defraud" to include acts "contrary to public policy" or that "fail to measure up to
16 the reflection of moral uprightness, of fundamental honesty, fair play and right dealing
17 the general and business life of members of society" is misplaced. Opp., p. 7. This
18 proposition is not a statement of the law, but rather "hyperbole" that "must be taken
19 with a grain of salt." *Matter of EDC, Inc.*, 930 F.2d 1275, 1281 (7th Cir. 1991); *see*
20 *also McNally*, 483 U.S. at 360 (rejecting intangible rights theory because "[t]here are
21 no constructive offenses"); *Matter of EDC, Inc.*, 930 F.2d at 1281 ("[r]ead literally
22 [this language] would put federal judges in the business of creating new crimes").
23 Additionally, *Woods* was a classic telemarketing fraud case, which merely reaffirmed
24 that "the deception need not be premised upon verbalized words alone" because the
25 "arrangement of the words, or the circumstances in which they are used may convey
26 the false and deceptive appearance," 335 F.3d at 997-98 (*quoting Lustiger v. U.S.*, 386
27 F.2d 132, 138 (9th Cir. 1967)), and that "materiality of falsehood is an element of the
28

- 5 -
**REPLY IN SUPPORT OF CLAIMANTS' MOTION TO DISMISS SAC**
188871.7

federal mail fraud, wire fraud and bank fraud statutes." *Id*. at 999. Neither principle is at issue here.

In short, the government's wire fraud theory is based on the alleged falsity of the LOR, and there is nothing in the SAC to support any other basis for the scheme to defraud element.

### 2. *None of the Representations in the LOR Were False.*

Relying solely on the LOR, the government contends that "Pulier and his company, ServiceMesh, intended to deprive CSC of the Earnout Payment by means of false representations." Opp., p. 7. But in its one-paragraph argument, the government fails to identify *any facts* that establish the alleged falsity of the LOR at the time it was signed. Moreover, Claimants demonstrated in their Motion to Dismiss that the SAC fails to allege facts that a "side agreement," as defined in the actual LOR, existed on January 30, 2014 (when Mr. Pulier signed the LOR), or at any time thereafter. By failing to respond to this argument, the government has conceded the point. *See Stichting Pensioenfonds ABP*, 802 F. Supp. 2d at 1132.

### 3. *CSC was Not Deprived of Money or Property.*

For there to be a scheme to defraud, the government must allege that CSC, as the supposed victim, was deprived of money or property. *See McNally*, 483 U.S. at 358-59; *Lew*, 875 F.2d at 221. CSC, however, received exactly what it bargained for, and much more, in its acquisition of ServiceMesh, including the revenue it recognized, and continues to recognize, from the CBA Contracts. *See* Rosenthal Decl., Exs. 4-9, 13-14. Notably, there are no allegations in the SAC that CSC has had to return any of that revenue, or that it has had to restate its earnings as a result of the alleged fraud. To the contrary, CSC's SEC filings confirm that it continues to recognize and benefit from the revenue it received in return for the earnout payment. *Id.*, Exs. 4-9.

At bottom, the government's position is not that CSC was deprived of money or property, but that it is entitled to a windfall it has not received: to keep the shares of

1  ServiceMesh it acquired, to retain the revenue from the CBA Contracts it has received
2  *and* to recover the $98 million earnout payment.  Claimants are not aware of any
3  authority that being deprived of an unearned windfall can be the basis for a scheme to
4  defraud.

**D.    The Government Has Failed to Allege that Any Representation in the LOR was Material.**

In their Motion, Claimants demonstrated that the alleged representations in the LOR, even assuming their falsity for purposes of the Motion, were not material to CSC's disbursement of the earnout payment for a number of reasons.  Motion, pp. 13-14.  In response, the government ignores: (1) Claimants' contention that the government's "but-for" allegations must be disregarded under *Iqbal* as far too conclusory; (2) the language of the actual LOR, which expressly states that "*nothing herein shall affect the calculation of the earnout amount*," Rosenthal Decl., Ex. 11 (Exhibit G) (emphasis added); and (3) CSC's SEC filings, which confirm that it has not restated its earnings because of any alleged impropriety involving the payments to Hunter and Waldron.  *See* Rosenthal Decl., Exs. 4-8.  By failing to address these points, the government has conceded them.  *See Stichting Pensioenfonds ABP*, 802 F. Supp. 2d at 1132.

Instead, the government relies upon an allegation taken from CSC's untested civil complaint in its state lawsuit against Mr. Pulier – a complaint that is presently the subject of a motion to dismiss.  Opp., pp. 9-10; *see* Rosenthal Decl., Ex. 10 (Del. Dkt. No. 57).  Besides the fact that the CSC allegation is nothing more than an allegation, *Id.*, Ex. 11, ¶ 45, it is just as conclusory as the government's allegation, declaring: "But for those representations [in the Letter of Representation and audit confirmation letter], CSC would not have included in its calculation of Measurement Revenue the 10 post-Closing contracts between ServiceMesh and CBA, and would not have paid the Earnout Payment." *Id*.  Accordingly, the government's borrowing an allegation from CSC's civil complaint does nothing to cure the SAC's failure to allege any

- 7 -
**REPLY IN SUPPORT OF CLAIMANTS' MOTION TO DISMISS SAC**
188871.7

plausible *facts* establishing the materiality of the LOR.

### E. The Government Has Failed to Allege an Interstate Wiring in Furtherance of the Alleged Scheme to Defraud CSC.

The government argues that because ServiceMesh's offices are in California and CSC's offices are in Virginia, the email attaching the LOR "necessarily crossed State lines . . . ." Opp., p. 10. There is no allegation, however, that Mr. Pulier was in California when the LOR was allegedly emailed, or that the unnamed "CSC executives" were in Virginia when they allegedly received it. *See* SAC, ¶ 31. Accordingly, the SAC alleges no facts from which to infer the essential element that the LOR crossed state lines.

Similarly, the government fails to allege any facts establishing that the sending of the LOR was in furtherance of the scheme to defraud: there are no allegations that the LOR had anything to do with the earnout calculation, and the actual LOR states that "nothing herein shall affect the calculation of the earnout amount in accordance with the earnout provisions of the EPA . . . ." *See* Rosenthal Decl., Ex. 11 (Ex. G).

### F. The Government Has Failed to Allege that Mr. Pulier Acted with Intent to Defraud CSC.

To infer Mr. Pulier's intent to defraud, the government contends that "[t]he representation made in the Letter of Representation that no side agreements were entered into in connection with any sales agreements was false, as evidenced by the payments made to at least two executives of CBA and the text message exchange alleged in Paragraph 41 of the SAC." Opp., p. 11. As discussed, however, the actual LOR was not false and the government once again fails to identify any facts that establish its falsity. Moreover, the alleged payments and edited text message exchange occurred months after Mr. Pulier signed the LOR, and there is no allegation that an undisclosed side agreement existed as of the date of the signing of the LOR on January 30, 2014, or alleged facts from which the existence of such an agreement on that date can be inferred.

- 8 -
**REPLY IN SUPPORT OF CLAIMANTS' MOTION TO DISMISS SAC**
188871.7

### G. The Government Has Failed to Allege the Elements of Transactional Money Laundering.

The SAC alleges none of the elements of transactional money laundering, and the government's arguments to the contrary are meritless. Opp., pp. 12-13.

*First*, as discussed above and in Claimants' Motion, the SAC fails to allege the specified unlawful activity of wire fraud. For this reason alone, the transactional money laundering claim fails.

*Second*, the government fails to allege facts showing that the funds used by Mr. Twynham to purchase defendant real property were derived from the alleged wire fraud scheme. In fact, the government ignores Claimants' showing that ServiceMesh legitimately earned well over $20 million in revenues during the earnout period. Exhibits 13 and 14 to the Rosenthal Declaration, in particular, establish that the CBA Contracts had significant value, thus undercutting the government's ability to show, as it must, that the entire amount of the earnout payment was criminally derived. *See U.S. v. Rutgard*, 116 F.3d 1270, 1292-93 (9th Cir. 1997) (where criminal proceeds are "commingled with innocent funds, the Ninth Circuit imposes a tracing requirement"); *U.S. v. Yagman*, 502 F. Supp. 2d 1084 (C.D. Cal. 2007) (Wilson, J.) (rejecting argument that "any transfer from the [mixed] account would be presumed to involve [tainted funds] for the purpose of applying § 1957").

*Third*, the government's belated claim that the "SAC alleges facts showing that claimant Bradley Twynham knew the real property transaction involved criminal property" is premised on a mischaracterization of the government's own allegations. The government cites to the SAC's paragraph 41, which alleges snippets from an April 12, 2014 text message exchange between Mr. Twynham and Waldron mentioning a "formula" and "$$" in reference to Hunter. SAC, ¶ 41. But as the government knows, this exchange had nothing to do with kickbacks; it concerned a potential offer of employment by CSC to Hunter. In fact, two paragraphs before, the government cited a slightly earlier email exchange between Mr. Twynham and

Hunter, alleging: "On April 2, 2014, in response to *Hunter's inquiry regarding possible employment with CSC*, Twynham stated in an email, 'The only thing Eric has to say on the topic is that he is absolutely keen to do it but is concerned CSC just would not have the comp plan that would get you here . . . .'" *Id.*, ¶ 39 (emphasis added).

*Fourth*, for Mr. Twynham to know that the earnout payment was criminally derived, he would have had to know that Mr. Pulier had signed and sent the allegedly false LOR. There is no allegation in the SAC, however, that Mr. Twynham knew, must have known, or had any reason to know of the LOR, or that it even existed.

## H. Leave to Amend Would Be Futile and the Government Makes No Showing Otherwise.

The government waited until the very last sentence of its Opposition before arguing, "[s]hould the Court conclude that the motion is well-taken, the government respectfully requests it be given the opportunity to amend." Opp., p. 13. The government's cursory request should be rejected as too little, too late. The government makes no effort whatsoever to respond to Claimants' showing that leave to amend would be futile, *see* Rosenthal Decl., Exs. 4-9, 11 (Exhibit G), 12 (Exhibits C & H, and Appendix P), 13, 14, and similarly makes no attempt to show what new and additional facts it could allege that would cure the wholesale deficiencies in the SAC without further violating Rule 11.

## I. Conclusion.

For the reasons stated above and in Claimants' Motion to Dismiss, the Court should dismiss the SAC with prejudice.

DATED: February 29, 2016     **ISAACS | FRIEDBERG LLP**

*/s/ Jeffrey Isaacs*
Jeffrey B Isaacs, Esq.

*Attorneys for Claimants
Bradley Twynham and Mariel Twynham*