EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
JONATHAN GALATZAN
California Bar No. 190414
Assistant United States Attorney
Asset Forfeiture Section
      Federal Courthouse, 14th Floor
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-2727
      Facsimile: (213) 894-7177
      E-mail: Jonathan.Galatzan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                  UNITED STATES DISTRICT COURT

              FOR THE CENTRAL DISTRICT OF CALIFORNIA

                         WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CV 15-6794 RGK(AJWx) |
| Plaintiff, | PLAINTIFF UNITED STATES OF AMERICA'S NOTICE OF MOTION AND MOTION FOR AN ORDER TO STAY THIS CIVIL FORFEITURE PROCEEDING; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF JONATHAN GALATZAN; NON-PUBLIC DECLARATION SUBMITTED IN CAMERA AND UNDER SEAL IN SUPPORT OF PLAINTIFF'S MOTION STAYING CIVIL FORFFEITURE PROCEEDING AND [PROPOSED] ORDER GRANTING MOTION FILED OR LODGED UNDER SEPARATE COVER |
| v. | |
| REAL PROPERTY LOCATED IN BRENTWOOD, CALIFORNIA (TWYNHAM), ET AL., | |
| Defendants. | |
| BRADLEY TWYNHAM AND MARIEL TWYNHAM, | Date:    April 11, 2016 |
| Claimants. | Time:    9:00 a.m. |
| | Courtroom:  850, |
| | the Honorable R. Gary Klausner |

TO CLAIMANTS BRADLEY TWYNHAM, MARIEL TWYNHAM, AND THEIR

ATTORNEYS OF RECORD HEREIN:

1

PLEASE TAKE NOTICE that on April 11, 2016 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable R. Gary Klausner, United States District Court, Courtroom 850, located at 255 E. Temple Street, 8th Floor, Los Angeles, California 90012, Plaintiff United States of America (the "United States") will move the Court, pursuant to 18 U.S.C. § 981(g) and the Court's inherent power, for an order staying this civil forfeiture proceeding until further order of the Court.  This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on October 23, 2015, January 20, 2016, and March 2, 2016, and is made on the ground that proceeding with civil discovery in this case will adversely affect the ability of the United States to conduct a related federal criminal investigation.

This motion is based upon this Notice of Motion and Motion; the attached Memorandum of Points and Authorities and Declaration of Jonathan Galatzan; the Non-Public Declaration Filed in Camera and Under Seal in Support of Plaintiff's Motion for Order Staying This Civil Forfeiture Proceeding and [Proposed] Order granting Motion (filed or lodged under separate cover); all pleadings, papers and records on file in this action; and such other and further matters as may be presented

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1  at the hearing (if any) on this Motion, and matters of which the

2  Court may take notice.

3                              Respectfully submitted,

4  DATED: March _9, 2016        EILEEN M. DECKER
                                United States Attorney
5                               LAWRENCE S. MIDDLETON
                                Assistant United States Attorney
6                               Chief, Criminal Division
                                STEVEN R. WELK
7                               Assistant United States Attorney
                                Chief, Asset Forfeiture Section

8

9                                /s/ Jonathan Galatzan_____
                                JONATHAN GALATZAN
10                               Assistant United States Attorney

11                              Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2  MEMORANDUM OF POINTS AND AUTHORITIES.............................1

3        INTRODUCTION  ..........................................1

4        STATEMENT OF FACTS.....................................1

5              A. The Instant *In Rem* Civil Asset Forfeiture Action ...1

6              B. The Related Federal Criminal Investigation ........4

7        ARGUMENT...............................................4

8

9              A. A Stay Is Appropriate Because Civil Discovery Will
                 Adversely Affect The Ability Of The Government To

10               Conduct A Related Criminal Investigation...........4

11                 1. A Stay Is Appropriate For Multiple Reasons ....6

12                    a. Proceeding With Discovery Would Permit
                        Claimants To Conduct Discovery When They

13                      Are Not Permitted To Do So During Federal
                        Criminal Investigations Or In Federal

14                      Criminal Cases. ..........................6

15                    b. The Government Would Likely Be Prejudiced
                        Or Harmed If Claimants Obtained Discovery

16                      Regarding The Criminal Investigation .....8

17                    c. The Disclosure Of Witnesses And Other
                        Investigation Details Would Adversely

18                      Effect And Jeopardize the Criminal
                        Investigation ............................9

19                 2. The Civil Forfeiture Case And Criminal
                      Investigation Are Related. ...................9

20                 3. The Harm That Will Befall The Government If
                      This Case Proceeds With Either Government Or

21                    Claimant Discovery Is Sufficient Ground For

22                    A Stay. .....................................10

23              B. A Stay Is Also Appropriate Under The Court's
                 Inherent Power To Control Its Dockets............13

24  CONCLUSION

25

26

27

28

i

**TABLE OF AUTHORITIES**

**Federal Cases**

*United States v. $247,052.54,*
        2007 WL 2009799 (N.D. Cal. July 6, 2007) ............. 11

*Funds From Fla. Capital Bank,*
    2013 WL 4714188 (C.D. Cal. July 29, 2013) ................ 8

*Landis v. N. Am. Co.,*
    299 U.S. 248 (1936) ..................................... 13

*Leyva v. Certified Grocers of Cal., Ltd.,*
    593 F.2d 857 (9th Cir. 1979) ........................... 13

*Mediterranean Enters. v. Ssangyong Corp.,*
    708 F.2d 1458 (9th Cir. 1983) .......................... 13

*United States v. All Funds Deposited in Account No. 200008524845,*
    162 F. Supp. 2d 1325 (D. Wyo. 2001) ..................... 5

*United States v. $2,067,437.08 in U.S. Currency,*
    2008 WL 238514 (E.D. Tex. Jan. 28, 2008) ............... 12

*United States v. All Funds on Deposit in Bus. Money Mkt. Account No. 028-0942059-66,*
    319 F. Supp. 2d 290 (E.D.N.Y. 2004) ..................... 9

*United States v. All Funds on Deposit in Suntrust Account,*
    456 F. Supp. 2d 64 (D.D.C. 2006) ....................... 9

*United States v. Contents of Nationwide Life Ins. Annuity Account,*
    2007 WL 682530 (S.D. Ohio Mar. 1, 2007) ................ 7

*United States v. GAF Fin. Servs.,*
    335 F. Supp. 2d 1371 (S.D. Fla. 2004) .................. 5

*United States v. One 2008 Audi R8 Coupe Quattro,*
    866 F.3d 1180 (C.D. Cal. 2011) ......................... 8

*United States v. One Assortment of Seventy-Three Firearms,*
    352 F. Supp. 2d 2 (D. Me. 2005) ..................... 7, 10

*United States v. One Single Family Residence etc.,*
    710 F. Supp. 1351 (S.D. Fla. 1989) ..................... 7

*United States v. Premises & Real Prop. at 297 Hawley St.,*
    727 F. Supp. 90 (W.D.N.Y. 1990) ........................ 7

*United States v. Real Prop. & Improvements Located At 10 Table Bluff Rd.*,
   2007 WL 911849 (N.D. Cal. Mar. 23, 2007) .................. 7

*United States v. VIN: WP1AD2A26DLA72280*,
   2014 WL 289379 (M.D. Fla. Jan. 27, 2014) ................. 9

*Wallace v. Kato*,
   549 U.S. 384 (2007) ..................................... 13

**Federal Statutes**

18 U.S.C. § 981(g) .......................................passim

18 U.S.C. § 1343 ...................................... 1, 2

18 U.S.C. § 981(a)(1)(C) ................................... 1

18 U.S.C. § 1957(a) ....................................... 1

18 U.S.C. § 981(a)(1)(A) .................................. 2

18 U.S.C. § 981(g)(1), (2)  ............................. 4, 6

18 U.S.C. § 981(g)(1) ..................................... 6

18 U.S.C. § 981(g)(5) ..................................... 6

18 U.S.C. § 981(g)(4) .................................... 10

18 U.S.C. § 981(g)(3) .................................... 10

**Other**

Fed. R. Crim. P. 16 ....................................... 6

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff United States of America (the "Government") respectfully submits this memorandum of points and authorities in support of its motion to stay this action pursuant to the mandatory stay provision of 18 U.S.C. § 981(g) and the Court's inherent power.  The Government seeks a stay pending the resolution of a related federal criminal investigation because proceeding with civil discovery in the instant action will adversely affect the Government's ability to conduct the related criminal investigation.  Under the proposed order lodged contemporaneously herewith, the Government will be required to report to the Court every ninety days regarding the status of the related criminal investigation.

### STATEMENT OF FACTS

**A.    The Instant *In Rem* Civil Asset Forfeiture Action.**

The Government has filed this *in rem* civil forfeiture action against real property located in Brentwood, California and $13,271.07 seized from Premier America Credit Union account number XXXXXX5967, alleging that (1) the defendant real property and defendant bank funds represent or are traceable to proceeds of one or more violations of 18 U.S.C. § 1343 (wire fraud), a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B), and are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C); and (2) the defendant real property constitutes property involved in one or more transactions in violation of 18 U.S.C. § 1957(a), or property traceable to such property, with the specified unlawful

activity being one or more violations of 18 U.S.C. § 1343, and is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).  Claimants Bradley and Mariel Twynham filed claims to the defendants.  Docket Nos. 14, 15, 38, and 39.  The Government's verified second amended complaint ("SAC") sets forth the following.

Between at least October 2013 and the present, certain shareholders of ServiceMesh, Inc. of Santa Monica, California ("ServiceMesh"), engaged in a scheme to fraudulently inflate the revenue of ServiceMesh in order to generate unwarranted, incentive-based compensation for ServiceMesh shareholders and generate bribes and kickbacks to their accomplices.  The result of this scheme was that the publicly traded company (Computer Sciences Corporation, or "CSC") that acquired ServiceMesh in October 2013 overpaid a variable incentive payment to ServiceMesh and its shareholders by approximately $98 million. (See SAC at ¶ 9.)

Pursuant to an agreement entered into on October 29, 2013, and amended on November 15, 2013, CSC agreed to acquire all of ServiceMesh's outstanding stock for a fixed cash amount at closing plus a variable incentive payment ("Earnout Amount") based on ServiceMesh's revenues between January 1, 2013 and January 31, 2014 ("Earnout Period").  For every $1 in ServiceMesh revenue generated during the Earnout Period in excess of a $20 million floor, ServiceMesh shareholders would collectively receive approximately $10.15 in Earnout Amount, up to a maximum of approximately $137 million.  (SAC at ¶ 15.)

1     On January 30, 2014, attached to an email courtesy copied
2  to executives at CSC, Eric Pulier provided CSC with a Letter of
3  Representation in which he certified to CSC that for all post-
4  acquisition revenue earned by ServiceMesh from November 15, 2013
5  through January 31, 2014, ServiceMesh (a) provided CSC with
6  complete customer contract files and all supporting
7  documentation, (b) accurately and completely responded to all
8  queries by CSC in its review of the post-acquisition revenue,
9  and (c) did not enter into any side agreements in connection
10 with ServiceMesh sales agreements with customers in relation to
11 the Earnout period transactions.  (SAC at ¶ 34.)  Based on the
12 representations from Pulier and ServiceMesh that it legitimately
13 exceeded the Earnout Amount revenue floor by approximately $9.7
14 million, CSC disbursed $98,034,058.00 to the Exchange Agent
15 Account on March 14, 2014.  But for these representations, CSC
16 would not have paid the Earnout Amount  (SAC at ¶ 36), which
17 included approximately $10.4 million attributable to contracts
18 entered into between ServiceMesh and the Commonwealth Bank of
19 Australia ("CBA").  Without the revenue attributable to CBA,
20 ServiceMesh shareholders would not have received any Earnout
21 Amount.  (SAC at ¶ 16.)
22     Contrary to Pulier's assertion in his January 30, 2014
23 communication with CSC, side agreements were entered into with
24 at least two executives at CBA, Jon Waldron and Keith Hunter,
25 who are believed to have received kickbacks from ServiceMesh or
26 its related entity, Ace Inc., aka Ace Foundation ("Ace") in
27 exchange for their role in pushing through contracts between CBA

28

3

1  and ServiceMesh during the Earnout Period.  (SAC at ¶¶ 17-34 and

2  45).

3        On March 17, 2014, $935,539.02 was wire transferred from

4  the Exchange Agent Account to claimant Bradley Twynham's Bank of

5  America Account.  On April 11, 2014, Twynham acquired the

6  defendant real property for $1,730,000.00, with a down payment

7  of approximately $700,000.00 and a loan with Premier American

8  Credit Union of $1,038,000.00.  The majority of the down payment

9  was paid via a wire transfer from Twynham's Bank of America

10 account.  On April 22, 2014, a cashier's check in the amount of

11 $135,395.96 was drawn on Twynham's Bank of America account and

12 deposited into Twynham's Premier America Credit Union account

13 number XXXXXX5967.  The defendant bank funds represent the

14 remainder of the illegally derived funds remaining in Twynham's

15 Premier America Credit Union account number XXXXXX5967 as of

16 September 2, 2015.  (SAC at ¶ 55.)

17       **B.   The Related Federal Criminal Investigation.**

18       The government has filed in camera and under seal a

19 declaration which discusses the federal criminal investigation.

20                         **ARGUMENT**

21 **A.   A Stay Is Appropriate Because Civil Discovery Will
        Adversely Affect The Ability Of The Government To
22      Conduct A Related Criminal Investigation.**

23       18 U.S.C. § 981(g)(1) & (2), which became effective August

24 23, 2000 as part of the Civil Asset Forfeiture Reform Act of

25 2000 ("CAFRA"), provides as follows:

26

27       (1)   Upon the motion of the United States, the court
               shall stay the civil forfeiture proceeding if the
28             court determines that civil discovery will
               adversely affect the ability of the Government to

                              4

conduct a related criminal investigation or the prosecution of a related criminal case.

(2) Upon the motion of a claimant, the court shall stay the civil forfeiture proceeding with respect to that claimant if the court determines that –

(A) the claimant is the subject of a related criminal investigation or case;

(B) the claimant has standing to assert a claim in the civil forfeiture proceeding; and

(C) continuation of the forfeiture proceeding will burden the right of the claimant against self-incrimination in the related investigation or case.

CAFRA "provide[s] for a stay whenever a court determines that civil discovery will adversely affect the ability of the government to investigate or prosecute a related criminal case." *United States v. GAF Financial Services, Inc.*, 335 F. Supp. 2d 1371, 1373 (S.D. Fla. 2004) (citation omitted). Although the concept of staying civil forfeiture proceedings was well ingrained in federal jurisprudence before the enactment of CAFRA, the explicit mandatory stay provision in CAFRA (*i.e.*, 18 U.S.C. § 981(g)) lightened the burden on the party seeking a stay by eliminating the requirement that the movant establish good cause for the stay, and permitting stays even if an ongoing investigation had not yet resulted in a criminal indictment. As noted in *United States v. All Funds Deposited in Account No. 200008524845*, 162 F. Supp. 2d 1325, 1330-31 (D. Wyo. 2001):

The standard for granting relief under the amended statute has also been changed by striking the words "for good cause shown" found in the former sections of the forfeiture law that establish the standard for granting stay relief. The new statute requires only that the court "determine[s] that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation for [sic] the

5

prosecution of a related criminal case." *See* 18 U.S.C. § 981(g)(1).

Accordingly, while cases granting stays under the prior statute's good cause requirement remain relevant under CAFRA, cases denying stays because good cause had not been shown are no longer good law.

### 1.   A Stay Is Appropriate For Multiple Reasons.

A stay is warranted here under 18 U.S.C. § 981(g)(1) because proceeding with civil discovery will have an adverse effect on the related criminal investigation.  In requesting a stay pursuant to 18 U.S.C. § 981(g)(1), "the Government may, in appropriate cases, submit evidence ex parte in order to avoid disclosing any matter that may adversely affect an ongoing criminal investigation or pending criminal trial."  18 U.S.C. § 981(g)(5).  Pursuant to this provision, the government has submitted a non-public declaration in camera and under seal in support of its stay request.

### a.   Proceeding With Discovery Would Permit Claimants To Conduct Discovery When They Are Not Permitted To Do So During Federal Criminal Investigations Or In Federal Criminal Cases.

Even without considering the evidence submitted under seal, a stay is warranted here.  If this action is not stayed, claimants will have the right to pursue civil discovery. Parties are not entitled to serve interrogatories, document requests or take depositions during federal criminal investigations or in federal criminal cases.  *See* Fed. R. Crim. P. 16.

6

Where, as here, proceeding with civil discovery would subject the government to broader discovery that it would have to endure in the criminal proceeding (*e.g.*, requiring the government to respond to written discovery or to questioning at depositions in civil proceeding when parties are not required to respond to written discovery or testify in depositions in criminal investigations or cases) or permit claimants and other third parties to obtain discovery earlier than they otherwise would be entitled to receive it in the criminal proceeding, a stay under the mandatory stay provisions of 18 U.S.C. § 981(g) is warranted.[1]  Indeed, numerous courts examining the <u>pre</u>-CAFRA stay statute (which is more restrictive than CAFRA's mandatory stay provision) held that "good cause" was established because the broader civil discovery available to a forfeiture claimant could interfere with a related criminal case.[2]

---

[1]*See, e.g.*, *United States v. One Assortment of Seventy-Three Firearms*, 352 F. Supp. 2d 2, 4 (D. Me. 2005) (a stay under 18 U.S.C. § 981(g) is appropriate where civil discovery will subject the related criminal investigation "to early and broader civil discovery than would otherwise be possible in the context of the criminal proceeding"); *United States v. Real Property and Improvements Located At 10 Table Bluff Road*, 2007 WL 911849 at *2 (N.D. Cal. Mar. 23, 2007) (stay must be granted if civil discovery will subject the Government to broader and earlier discovery than would occur in a criminal case).  *See also United States v. Contents of Nationwide Life Ins. Annuity Account*, 2007 WL 682530 at *1 (S.D. Ohio Mar. 1, 2007) ("As the government correctly argues, the Court is also very concerned about Defendants in the criminal case using this civil case as a back door method to obtain discovery outside the scope of Fed. R. Crim. P. 16").

[2]*See, e.g.*, *United States v. Property at 297 Hawley Street*, 727 F. Supp. 90, 91 (W.D.N.Y. 1990) (good cause requirement satisfied as stay necessary to protect criminal case from "potentially" broad discovery demands); *United States v. One Single Family Residence Located at 2820 Taft St.*, 710 F. Supp. 1351, 1352 (S.D. Fla. 1989) (stay granted as "scope of civil discovery could interfere with the criminal prosecution").

**b.  The Government Would Likely Be Prejudiced Or
Harmed If Claimants Obtained Discovery
Regarding The Criminal Investigation.**

This is not a case involving merely potential discovery
which claimants might conduct.  Here, claimants have actually
served discovery which would require the Government to provide
details about the federal criminal investigation, including the
identity of witnesses and documents the Government has obtained
during the investigation.[3]  In light of the likely prejudice
which would result from answering the discovery, the government
has shown that a stay is warranted because proceeding with
discovery would adversely impact the government's related
criminal investigation.[4]

---

[3]Pursuant to their request for production of documents,
claimants have requested that the Government produce, among
other things, documents the Government has obtained from CSC
during its criminal investigation (requests nos. 42-46) and
broad, open-ended requests substantiating the major factual
contentions of the SAC, which would necessarily require
production of documents that are part of the criminal
investigation (requests nos. 1-4, 10 and 19). Galatzan Decl. Ex.
A.

Similarly, claimants' interrogatories request that the
government, among other things, identify witnesses by name,
address and telephone number who can substantiate the major
factual contentions of the SAC and who have information
regarding the government's investigation of claimants, which
would necessarily require revealing the identity of witnesses
from the criminal investigation (requests nos. 4, 6-14, 16-18,
and 20-21).  Galatzan Decl. Ex. B.

In addition, the claimants have served a notice of subpoena
for production of documents, information, or objects on CSC, a
victim of the fraud scheme described in the SAC.  That subpoena
included fifty numbered requests for documents related to the
facts of the Government's investigation. Absent the ability to
conduct discovery in this case, claimants would not be able to
compel production of these documents from CSC during the
criminal investigation.  Galatzan Decl. Ex. C.

[4]*See One 2008 Audi R8 Coupe Quattro*, 866 F.3d at 1184
(government need not make any particularized showing of
prejudice or harm: "Courts have routinely issued Section
981(g)(1) stays on the basis of the Government's allegations of

8

### c.  The Disclosure Of Witnesses And Other Investigation Details Would Adversely Effect And Jeopardize the Criminal Investigation.

In addition, discovery in this case would adversely affect the prosecution of the related criminal investigation because it would require the government to disclose its witnesses. Accordingly, a stay is appropriate on that ground alone.[5]

### 2.  The Civil Forfeiture Case And Criminal Investigation Are Related.

The criminal investigation is clearly related to the civil forfeiture action in light of the broad definition of "related criminal investigation" in 18 U.S.C. § 981(g).  That definition makes clear that neither the parties nor the facts in the civil and criminal cases need be identical for the two cases to be considered related.  Instead, the court must analyze several factors, which are set forth in the disjunctive:

> In determining whether a criminal case or investigation is "related" to a civil forfeiture proceeding, the court shall consider the degree of

---

likely prejudice to the criminal proceeding caused by the civil discovery") (citation omitted); *United States v. $1,026,781.61 in Funds From Florida Capital Bank*, 2013 WL 4714188, *1 (C.D. Cal. July 29, 2013) (same).

[5]*See United States v. VIN: WP1AD2A26DLA72280*, 2014 WL 289379, *2 (M.D. Fla. Jan. 27, 2014) (stay granted because discovery of the identities of the witnesses in the civil case would jeopardize the criminal investigation); *United States v. All Funds on Deposit in Suntrust Bank Account Number XXXXXXXX8359*, 456 F. Supp. 2d 64, 66 (D.D.C. 2006) (granting motion for a stay because discovery in civil forfeiture case would adversely affect the criminal investigation because the discovery "could compromise any existing confidential informants and/or interfere with the Government's ability to obtain confidential information from others"); *United States v. All Funds on Deposit in Business Marketing Account*, 319 F. Supp. 2d 290, 294 (E.D.N.Y. 2004) ("The court is satisfied that information routinely ordered disclosed in civil matters would compromise the identity of confidential informants and cooperating witnesses.  Under these circumstances, the court is required to stay this civil action.  18 U.S.C. § 981(g)(1)").

similarity between the parties, witnesses, facts, and circumstances involved in the two proceedings, without requiring an identity with respect to any one or more factors.

18 U.S.C. § 981(g)(4).  In other words, *id.* indicates that the forfeiture case and criminal investigation should have some similarities but need not be identical in all aspects.

The civil forfeiture and criminal cases are clearly related under the broad statutory definition.  The details of the relationship between the two is set forth in the non-public declaration.

### 3. The Harm That Will Befall The Government If This Case Proceeds With Either Government Or Claimant Discovery Is Sufficient Ground For A Stay.

Key witnesses involved in the illegal activities will likely assert the Fifth Amendment privilege against self-incrimination in response to discovery by the government, meaning that the government would be subject to discovery while claimants and third parties will likely refuse to provide discovery on core issues.  Under these circumstances, a stay is appropriate because permitting discovery from the government will allow impermissible one-way discovery.[6]

Absent a stay, the government would need written and deposition discovery from claimants and other persons involved in the illegal conduct which is part of the federal criminal

---

[6] *See One Assortment of 73 Firearms*, 352 F. Supp. 2d at 4 ("a protective order cannot be imposed as an alternative to a stay because [its] effect . . . would be to allow the claimants' to pursue broad civil discovery while the Government would substantially be unable to do so"); 18 U.S.C. § 981(g)(3) ("In no case, however, shall the court impose a protective order as an alternative to a stay if the effect of such protective order would be to allow one party to pursue discovery while the other party is substantially unable to do so").

investigation, as well as from third parties with relevant information pertaining to the investigation, in order to prove the Government's case in chief and refute the affirmative defenses claimants will raise.  Even if claimants or the third party responded to Government discovery, the Government would be creating discovery which would have to be turned over in any subsequently-filed criminal case, which would thereby expose the prosecution strategy for proving that particular individuals or entities engaged in illegal conduct.  Therefore, the government's need to conduct discovery would adversely affect the government's ability to conduct the related criminal investigation.

In *United States v. $247,052.54*, 2007 WL 2009799 (N.D. Cal. July 6, 2007), the claimant (Dobbs) argued that because he was prepared to move for summary judgment without seeking any discovery in the civil forfeiture action, the action should not be stayed under 18 U.S.C. § 981(g) because discovery could not adversely affect the criminal prosecution against him.  In rejecting Dobbs' argument and staying the action, the court noted that "Dobbs is not the only party that might want discovery in this action, however.  The Government seeks and is entitled to conduct discovery." Id. at *1 (citation omitted). The court also stated that proceeding with discovery "may have a serious adverse impact on the criminal case against Dobbs." Id. at *2.  In addition, the court reasoned:

> The factual allegations underlying the two cases are
> very similar. . . . To prove that the Defendants in
> this case are linked to the sale and distribution of
> marijuana, and therefore subject to forfeiture, the
> Government will have to prove many of the same facts

> it will need to prove in the criminal case.  The risk
> of an adverse effect on the criminal case is clear.
> The Government asserts that it would need to depose
> certain witnesses-Edward Shield and Wade Trabue-to
> proceed on its forfeiture claims.  Both are also
> witnesses with knowledge relevant to the criminal
> case, and deposing them now would allow Dobbs the
> opportunity to cross examine them in advance of trial,
> potentially exposing the Government's strategy for
> trial, or require them to divulge information related
> to the criminal case.  Dobbs simply ignores this
> concern.  The Government would also require
> testimonial declarations from law enforcement
> officers, whose testimony will play a central role in
> the criminal trial, creating additional risks.

Id.[7]

Finally, a stay is in the interests of judicial economy as common factual questions are likely to be explored in any subsequently-filed criminal case.  The civil forfeiture and criminal investigation involve many of the same illegal acts and transactions and the same or similar issues of fact and law. Many, if not most, of the factual disputes and questions relevant to the civil forfeiture action will likely be explored in any subsequently filed criminal case.  In any event, the issues left to be determined in the civil forfeiture case after the resolution of a related criminal case are likely to be pared down.  The interest of judicial efficiency will be served by narrowing the focus of the civil case to whatever issues are left unresolved after the resolution of any criminal case.

---

[7]*Accord, United States v. $2,067,437.08 in U.S. Currency*, 2008 WL 238514, *6 (E.D. Tex. Jan. 28, 2008) (stay ordered where claimant contended that it could proceed with summary judgment motion without discovery, government claimed it had to engage in ordinary civil discovery and claimant acknowledged that it would be unduly prejudiced if claimant was required to produce discovery while criminal case was pending against claimant).

12

Civil discovery will adversely affect the related criminal investigation.  Accordingly, this action should be stayed pursuant to 18 U.S.C. § 981(g), the mandatory stay provision.

**B.   A Stay Is Also Appropriate Under The Court's Inherent Power To Control Its Dockets.**

The court is also empowered to issue a stay pursuant to its inherent power to control its docket and calendar.  *See Mediterranean Enterprises v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983).  When "it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it," the district court may do so "pending resolution of independent proceedings which bear upon the case."  *Id.* at 1465 (quoting *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979)).  This rule "does not require that the issues in [the other] proceedings are necessarily controlling of the action before the court."  *Leyva, supra*, 593 F.2d at 863-64 (citations omitted).  "[T]he court may order a stay of the action pursuant to its power to control its docket and calendar and to provide for a just determination of the cases pending before it."  *Id.* at 864.[8]  Therefore, a stay of this action is also proper under the Court's inherent power.

//

//

---

[8] *See also Landis v. North American Co.*, 299 U.S. 248, 254 (1936) that the (district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"); *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) ("it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended").

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that its motion be granted.

                                  Respectfully submitted,

DATED: March _9, 2016             EILEEN M. DECKER
                                  United States Attorney
                                  LAWRENCE S. MIDDLETON
                                  Assistant United States Attorney
                                  Chief, Criminal Division
                                  STEVEN R. WELK
                                  Assistant United States Attorney
                                  Chief, Asset Forfeiture Section


                                  /s/ Jonathan Galatzan_____
                                  JONATHAN GALATZAN
                                  Assistant United States Attorney

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

14

## DECLARATION OF JONATHAN GALATZAN

I, Jonathan Galatzan, declare and state as follows:

1.   I am an Assistant United States Attorney in the Office of the United States Attorney for the Central District of California in Los Angeles, California, and am responsible for the representation of the Plaintiff United States of America (the "United States") in this action.  I have personal and first-hand knowledge of the facts set forth in this Declaration and, if called to testify, I could and would testify competently thereto.

2.   Attached hereto as Exhibits A and B, respectively, are true and correct copies of Claimants Bradley and Mariel Twynhams's First Request for Production of Documents to Plaintiff (Exhibit A) and First Set of Interrogatories to Plaintiff (Exhibit B). Attached hereto as Exhibit C is a true and correct copy of a subpoena for production of documents, information, or objects on Computer Sciences Corporation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 9, 2016 at Los Angeles, California.

/s/ Jonathan Galatzan
Jonathan Galatzan