Jeffrey B. Isaacs, Esq., SBN 117104
William Seldeen, Esq., SBN 222388
Oren Rosenthal, Esq., SBN 243110
**ISAACS | FRIEDBERG LLP**
555 South Flower Street, Suite 4250
Los Angeles, California 90071
Telephone: (213) 929-5550/Facsimile: (213) 955-5794
Email: jisaacs@ifcounsel.com

David A. Kettel, Esq., SBN 125745
**THEODORA ORINGHER PC**
1840 Century Park East, Suite 500
Los Angeles, California  90067-2120
Telephone: (310) 557-2009/Facsimile: (310) 551-0283
Email: dkettel@tocounsel.com

Attorneys for Claimants
Bradley Twynham and Mariel Twynham

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>REAL PROPERTY LOCATED IN BRENTWOOD, CALIFORNIA (TWYNHAM) and $13,271.07 SEIZED FROM PREMIER AMERICA CREDIT UNION ACCOUNT NUMBER XXXXXX5967,<br><br>    Defendants.<br><br>BRADLEY MARTIN LEWIS TWYNHAM AND MARIEL TWYNHAM,<br><br>    Titleholders and Claimants. | Case No. CV 15-6794-RGK-AJW<br><br>**CLAIMANT BRADLEY TWYNHAM'S REQUEST FOR PRODUCTION OF DOCUMENTS TO  PLAINTIFF UNITED STATES OF AMERICA, SET ONE**<br><br>Date Action Filed:  Sep. 2, 2015<br>FAC Filed:  Nov. 23, 2015<br>SAC Filed:  Dec. 14, 2015<br>Trial Date:  Oct. 11, 2016 |

**PROPOUNDING PARTY:**     Claimant BRADLEY TWYNHAM

**RESPONDING PARTY:**     Plaintiff  UNITED STATES OF AMERICA

**SET NUMBER:**     ONE

1  Pursuant to Rule 34 of the Federal Rules of Civil Procedure ("Rule 34"),
2  Claimant Bradley Twynham hereby requests that Plaintiff United States of America
3  ("Plaintiff") produce the documents, electronically stored information and tangible
4  things requested below.  Pursuant to Rule 34(b)(2), Plaintiff has 30 days following the
5  date of service of these Requests to respond in writing and/or state objections to these
6  Requests.

## DEFINITIONS

8  **1.**  As used herein, "ACE" refers to Ace Inc., dba Ace Foundation.
9  **2.**  As used herein, "CBA" refers to Commonwealth Bank of Australia.
10 **3.**  As used herein, "COMMUNICATIONS" mean, without limitation, all
11 DOCUMENTS RELATING TO the exchange or transmission of words, ideas,
12 information, or things to another individual or entity, whether accomplished person to
13 person, by telephone, in writing (as that term is defined in Rule 1001 of the Federal
14 Rules of Evidence), via electronic mail, or through another medium, including,
15 without limitation; (1) discussions, conversations, negotiations, conferences,
16 meetings, speeches, memoranda, letters, correspondence, attachments, notes,
17 statements, or questions; and (2) any transmission of words, ideas, information, or
18 things to a file, record, or repository for documentation or future reference, whether
19 exchanged or transmitted to another person or entity.
20 **4.**  As used herein, "COMPLAINT" refers to the initial Verified Complaint
21 for Forfeiture YOU filed in this action.
22 **5.**  As used herein, "CSC" refers to Computer Sciences Corporation, its
23 subsidiaries, including ServiceMesh, Inc., and its officers, directors, employees,
24 agents, attorneys and representatives (when acting in such capacities).
25 **6.**  As used herein, "DOCUMENTS," or "DOCUMENT" includes all
26 "writings" within the meaning of Rule 1001 of the Federal Rules of Evidence, and
27 includes the original and any duplicate of handwriting, typewriting, printing,
28 photographing and every other means of recording upon any tangible thing and form

of communication or representation, including letters, words, pictures, sounds, symbols or combinations of them, including, but not limited to, correspondence, attachments, memoranda, notes, research, notations, conversations, compilations of computer data, forms, tape, reports, calendars, journals, electronically stored information, and any other writings in YOUR possession.  "DOCUMENT" as used herein shall not include any transcripts of grand jury testimony or other proceedings protected from disclosure by Rule 6(e) of the Federal Rules of Criminal Procedure, and shall also not include any reports, memoranda, or other internal government documents protected from disclosure by Rule 16(a)(2) of the Federal Rules of Criminal Procedure.

   **7.**   As used herein, "FAC" refers to the Verified First Amended Complaint for Forfeiture YOU filed in this action.

   **8.**   As used herein, "HUNTER" refers to Keith Hunter.

   **9.**   As used herein, "PULIER" refers to Eric Pulier.

   **10.**  As used herein, "RELATING TO" means constituting, containing, concerning, reflecting, reporting, describing, discussing, explaining, identifying, referencing, pertaining to, or dealing with, in whole or in part.  DOCUMENTS "RELATING TO" an identified or particular DOCUMENT include, without limitation, the identified or particular DOCUMENT itself.

   **11.**  As used herein, "SAC" refers to the Verified Second Amended Complaint for Forfeiture in this action.

   **12.**  As used herein, "SERVICEMESH" refers to ServiceMesh, Inc.

   **13.**  As used herein, "SWISSCOM" refers to Swisscom A.G.

   **14.**  As used herein, "THIEL" refers to Gunther Thiel.

   **15.**  As used herein, "WALDRON" refers to Jon Waldron.

   **16.**  As used herein, "YOU" or "YOUR" refers to Plaintiff United States of America and includes the U.S. Attorney's Office for the Central District of California, including Assistant U.S. Attorneys Jonathan Galatzan and Stephen Cazares, and the

- 3 -

1  Federal Bureau of Investigation, including Special Agents Ryan Adams
2  and Elliot Manegold.

### INSTRUCTIONS

**A.** Whenever it is necessary to bring within the scope of these Requests DOCUMENTS that might otherwise be construed to be outside their scope: (1) the singular of every word shall include the plural and vice versa; (2) use of "and" as well as "or" shall be construed both disjunctively and conjunctively; (3) use of "includes" and "including" shall be construed to mean "without limitation"; (4) use of "all" or "any" shall be construed as "any and all"; and (5) the use of a verb in any tense or voice shall be construed as the use of that verb in all other tenses and voices.

**B.** In complying with these Requests, YOU are required to produce all DOCUMENTS described herein that are in YOUR possession, custody, or control, regardless of their location and regardless of whether such DOCUMENTS are held by YOU or by YOUR agents, attorneys, employees, or representatives. A DOCUMENT is deemed to be in YOUR control if YOU have the right to secure the DOCUMENT or a copy thereof from another person or from a public or private entity, including, without limitation, agents, attorneys and consultants having actual physical possession of the DOCUMENT.

**C.** DOCUMENTS produced pursuant to these Requests must be produced in the same form and in the same order in which they existed prior to production or were maintained in the usual course of business, or such DOCUMENTS shall be organized and labeled to correspond with the categories in these Requests, pursuant to Rule 34(b)(2)(E)(i) of the Federal Rules of Civil Procedure. DOCUMENTS produced as they are maintained in the usual course of business are to be produced in the boxes, file folders, binders, or other containers in which the DOCUMENTS are found. The title, labels, or other descriptions of the boxes, file folders, binders, or other containers are to be left intact. DOCUMENTS that are physically attached to each other in the usual course of business shall be left so attached. Conversely, DOCUMENTS that are

- 4 -

segregated or maintained separately from DOCUMENTS in the usual course of business shall be left so segregated or separated.

    **D.**    YOU are required to produce any and all drafts and copies of all DOCUMENTS that are responsive to any Request, and all copies of such DOCUMENTS that are not identical in any respect, including, without limitation, copies containing handwritten notes, markings, stamps, or interlineations. Rule 34(a)(1)(A) of the Federal Rules of Civil Procedure.

    **E.**    If any objection is made to any Request, YOU must state all grounds for that objection.  Failure to specifically identify all grounds for an objection within the time allowed by law shall constitute a waiver of those grounds as the basis for objection.

    **F.**    If YOU contend that it would be unreasonably burdensome to obtain and provide all DOCUMENTS responsive to any one of these Requests, then in response to that Request YOU must identify all DOCUMENTS that can be produced by YOU without undertaking what YOU contend to be an unreasonable burden, and state with particularity the grounds upon which YOU contend that it would be unreasonably burdensome to produce further responsive DOCUMENTS.

    **G.**    If YOU contend that any DOCUMENT responsive to any Request is protected from disclosure by the attorney-client privilege, attorney work product doctrine, or some other privilege or protection recognized in law, for each such DOCUMENT provide the following information:

    (1)    The date on which the DOCUMENT was prepared;

    (2)    The author(s) of the DOCUMENT;

    (3)    To whom the DOCUMENT was addressed;

    (4)    To whom the DOCUMENT was copied;

    (5)    The title and/or subject matter of the DOCUMENT;

    (6)    The number of pages of the DOCUMENT;

    (7)    The type of DOCUMENTS (e.g., memorandum, letter); and

(8) The nature of the privilege(s) and/or other protection(s) asserted and the grounds therefor.

**H.** If no DOCUMENTS are responsive to a particular Request, state that no responsive DOCUMENTS exist.

**I.** If a Request calls for the production of a DOCUMENT that was once in YOUR possession, custody, or control and YOU know it has since been destroyed, placed beyond YOUR control, or otherwise disposed of, for each such DOCUMENT provide the following information:

(1) The date on which the DOCUMENT was prepared;
(2) The author(s) of the DOCUMENT;
(3) To whom the DOCUMENT was addressed;
(4) To whom the DOCUMENT was copied;
(5) Any known recipient(s) of the DOCUMENT, other than the person(s) to whom the DOCUMENT was addressed and/or copied;
(6) The title and/or subject matter of the DOCUMENT;
(7) The number of pages of the DOCUMENT;
(8) The type of DOCUMENT (e.g., memorandum, letter); and
(9) The present location(s) of any remaining copies, drafts, or versions of the DOCUMENT.

**J.** A DOCUMENT produced in response to one Request need not be produced in response to any other Request, but the DOCUMENT should be cross-referenced in response to each Request to which it is responsive.

**K.** A DOCUMENT previously produced need not be produced again, but the response should identify the previously produced DOCUMENT by providing its Bates number or range, or any other identifying number, or, in the absence of such identifying information, specifying: (i) its type; (ii) title; (iii) subject matter; (iv) date of creation; (v) author(s); and (vi) addressee(s).

**L.** A Request for DOCUMENTS within a particular time period shall be deemed to include all DOCUMENTS that were dated, prepared, sent, or received during that time period, or otherwise refer or relate to that time period.

## REQUEST FOR PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION AND TANGIBLE THINGS

**REQUEST NO. 1**

All DOCUMENTS RELATING TO YOUR contention that "certain shareholders of ServiceMesh, Inc. engaged in a scheme to fraudulently inflate the revenue of ServiceMesh in order to generate unwarranted incentive-based compensation for ServiceMesh shareholders," as alleged in paragraph 9 of the SAC.

**REQUEST NO. 2**

All DOCUMENTS RELATING TO YOUR contention that "certain shareholders of ServiceMesh, Inc. engaged in a scheme to fraudulently inflate the revenue of ServiceMesh in order to . . . generate bribes and kickbacks to their accomplices," as alleged in paragraph 9 of the SAC.

**REQUEST NO. 3**

All DOCUMENTS RELATING TO YOUR contention that "[t]he result of this scheme was that the publicly traded company (Computer Science Corporation) that acquired ServiceMesh overpaid a variable incentive payment to ServiceMesh and its shareholders by approximately $98 million," as alleged in paragraph 9 of the SAC.

**REQUEST NO. 4**

All DOCUMENTS RELATING TO YOUR contention that, "[w]ithout the revenue attributable to CBA, ServiceMesh shareholders would not have received any Earnout Amount," as alleged in paragraph 16 of the SAC.

/ / /

/ / /

- 7 -

**REQUEST NO. 5**

All DOCUMENTS RELATING TO YOUR contention that "Waldron, with direction from Pulier, actively lobbied CBA to hire Hunter as Waldron's supervisor at CBA and encouraged Hunter to accept the position," as alleged in paragraph 17 of the SAC.

**REQUEST NO. 6**

All DOCUMENTS RELATING TO the email exchange referenced in paragraph 17 of the SAC, including, without limitation, the complete email string.

**REQUEST NO. 7**

All DOCUMENTS RELATING TO the email exchange referenced in paragraph 18 of the SAC, including, without limitation, the complete email string.

**REQUEST NO. 8**

All DOCUMENTS RELATING TO the email exchange referenced in paragraph 19 of the SAC, including, without limitation, the complete email string.

**REQUEST NO. 9**

All DOCUMENTS RELATING TO the email exchange referenced in paragraph 20 of the SAC, including, without limitation, the complete email string.

**REQUEST NO. 10**

All DOCUMENTS RELATING TO the "efforts by Waldron and Hunter to expedite the consummation of a deal whereby CBA would purchase security technology products by McAfee, Inc. . . . from ServiceMesh . . . rather than continuing to procure them directly from McAfee or via . . . another vendor," as referenced in paragraph 21 of the SAC.

**REQUEST NO. 11**

All DOCUMENTS RELATING TO the email exchange referenced in paragraph 22 of the SAC, including, without limitation, the complete email string.

/ / /

/ / /

**REQUEST NO. 12**

All DOCUMENTS RELATING TO the email exchange referenced in paragraph 23 of the SAC, including, without limitation, the complete email string.

**REQUEST NO. 13**

All DOCUMENTS RELATING TO the email exchange referenced in paragraph 24 of the SAC, including, without limitation, the complete email string.

**REQUEST NO. 14**

All DOCUMENTS RELATING TO the email exchange referenced in paragraph 25 of the SAC, including, without limitation, the complete email string.

**REQUEST NO. 15**

All DOCUMENTS RELATING TO the email exchange referenced in paragraph 26 of the SAC, including, without limitation, the complete email string.

**REQUEST NO. 16**

All DOCUMENTS RELATING TO the email exchange referenced in paragraph 27 of the SAC, including, without limitation, the complete email string.

**REQUEST NO. 17**

All DOCUMENTS RELATING TO the email exchange referenced in paragraph 28 of the SAC, including, without limitation, the complete email string.

**REQUEST NO. 18**

All DOCUMENTS RELATING TO the email exchange referenced in paragraph 29 of the SAC, including, without limitation, the complete email string.

**REQUEST NO. 19**

All DOCUMENTS RELATING TO "the collective efforts by Waldron, Hunter, Twynham and Pulier to consummate additional contracts between CBA and ServiceMesh before the end of the Earnout Period," as referenced in paragraph 30 of the SAC.

/ / /

/ / /

**REQUEST NO. 20**

All DOCUMENTS RELATING TO the email exchange referenced in paragraph 30 of the SAC, including, without limitation, the complete email string.

**REQUEST NO. 21**

All DOCUMENTS RELATING TO the email exchange referenced in paragraph 31 of the SAC, including, without limitation, the complete email string.

**REQUEST NO. 22**

All DOCUMENTS RELATING TO the email exchange referenced in paragraph 32 of the SAC, including, without limitation, the complete email string.

**REQUEST NO. 23**

All DCOUMENTS RELATING TO YOUR contention that the "nine contracts between CBA and ServiceMesh" sent to HUNTER on January 25, 2014, "separately . . . fell within Hunter's financial delegation and did not require additional management approvals," as alleged in paragraph 32 of the SAC.

**REQUEST NO. 24**

All DOCUMENTS RELATING TO the email exchange referenced in paragraph 33 of the SAC, including, without limitation, the complete email string.

**REQUEST NO. 25**

The "Letter of Representation" referenced in paragraph 34 of the SAC, all drafts and versions of it, and all other DOCUMENTS RELATING TO it, including, without limitation, all DOCUMENTS RELATING TO its transmission, receipt and review by CSC.

**REQUEST NO. 26**

All DOCUMENTS RELATING TO the email exchange referenced in paragraph 34 of the SAC, including, without limitation, the complete email string.

**REQUEST NO. 27**

All DOCUMENTS RELATING TO YOUR contention that, "[b]ased on the representations from Pulier and ServiceMesh that it legitimately exceeded the Earnout

- **10** -

1  Amount revenue floor, CSC disbursed $98,034,058.00 to the Exchange Agent
2  Account," as alleged in paragraph 36 of the SAC.

**REQUEST NO. 28**

All DOCUMENTS RELATING TO YOUR contention that, "[b]ut for these representations, CSC would not have paid the Earnout Amount," as alleged in paragraph 36 of the SAC.

**REQUEST NO. 29**

All DOCUMENTS RELATING TO YOUR contention that, "[w]hen confronted with these transfers, Waldron and Hunter provided conflicting explanations," as alleged in paragraph 36 of the SAC, including, without limitation, all DOCUMENTS recording, transcribing, describing, summarizing, or discussing any such "explanations."

**REQUEST NO. 30**

All DOCUMENTS RELATING TO YOUR contention that, "[o]n December 17, 2014, CBA investigators conducted interviews of both Waldron and Hunter," as alleged in paragraph 47 of the SAC, including, without limitation, all DOCUMENTS recording, transcribing, describing, summarizing, or discussing any such "interviews."

**REQUEST NO. 31**

All DOCUMENTS RELATING TO YOUR contention that "Hunter subsequently provided purported evidence in the form of invoices to Ace for work that he had done," as alleged in paragraph 48 of the SAC.

**REQUEST NO. 32**

All DOCUMENTS RELATING TO YOUR contention that "[a] forensic analysis of the documents by Ernst & Young, Australia, determined that the invoices had been created with a version of software not available as of the date of the invoices," as alleged in paragraph 48 of the SAC, including, without limitation, all reports of any such "analysis" by Ernst & Young, Australia.

**REQUEST NO. 33**

All DOCUMENTS RELATING TO YOUR contention that "Hunter subsequently confessed to fabricating the invoices," as alleged in paragraph 48 of the SAC, including, without limitation, all DOCUMENTS recording, transcribing, describing, summarizing, or discussing any such "confess[ion].".

**REQUEST NO. 34**

All DOCUMENTS RELATING TO YOUR contention that "CBA determined that the value of the products and services provided by ServiceMesh to CBA in the contracts described was inflated by approximately 65 percent," as alleged in paragraph 52 of the SAC.

**REQUEST NO. 35**

All DOCUMENTS RELATING TO YOUR contention that, "[o]n March 31, 2015, CSC suspended Pulier while it conducted an internal investigation into his actions," as alleged in paragraph 53 of the SAC, including, without limitation, all DOCUMENTS RELATING TO any such "internal investigation."

**REQUEST NO. 36**

All DOCUMENTS RELATING TO YOUR contention that "CSC has claimed that Pulier resigned after refusing to cooperate with the internal investigation," as alleged in paragraph 53 of the SAC, including, without limitation, all DOCUMENTS RELATING TO any such "internal investigation."

**REQUEST NO. 37**

All DOCUMENTS RELATING TO YOUR contention that TWYNHAM "was initially cooperative with CSC's internal investigation," as alleged in paragraph 54 of the SAC, including, without limitation, all DOCUMENTS RELATING TO any such "internal investigation."

//

//

**REQUEST NO. 38**

All DOCUMENTS RELATING TO YOUR contention that TWYNHAM "departed the United States to Australia on June 1, 2015, without notice," as alleged in paragraph 54 of the SAC.

**REQUEST NO. 39**

All DOCUMENTS RELATING TO YOUR contention that, "[i]n or about July, 2015, CSC notified Twynham of its intent to terminate his employment for failure to cooperate with their investigation," as alleged in paragraph 54 of the SAC, including, without limitation, all DOCUMENTS RELATING TO any claim that TWYNHAM "fail[ed] to cooperate with [CSC's] investigation."

**REQUEST NO. 40**

All DOCUMENTS RELATING TO YOUR contention that the "$935,539.02 [that] was wire transferred from the Exchange Agent Account to Twynham's Bank of America Account" constituted "illegally derived funds," as alleged in paragraph 55 of the SAC.

**REQUEST NO. 41**

All DOCUMENTS RELATING TO YOUR contention that "[t]he defendant bank funds represent the remainder of the illegally derived funds remaining in Twynham's Premier America Credit Union account number XXXXXX5967 as of September 2 , 2015," as alleged in paragraph 55 of the SAC.

**REQUEST NO. 42**

All electronic COMMUNICATIONS (including emails and text messages) to, from, or copying TWYNHAM, and all abstracts, digests, summaries and analyses of such COMMUNICATIONS, that CSC or its legal counsel produced or otherwise provided to YOU.

**REQUEST NO. 43**

All electronic COMMUNICATIONS (including emails and text messages) to, from, or copying PULIER, and all abstracts, digests, summaries and analyses of such

- 13 -

COMMUNICATIONS, that CSC or its legal counsel produced or otherwise provided to YOU.

**REQUEST NO. 44**

All electronic COMMUNICATIONS (including emails and text messages) to, from, or copying HUNTER, and all abstracts, digests, summaries and analyses of such COMMUNICATIONS, that CSC or its legal counsel produced or otherwise provided to YOU.

**REQUEST NO. 45**

All electronic COMMUNICATIONS (including emails and text messages) to, from, or copying WALDRON, and all abstracts, digests, summaries and analyses of such COMMUNICATIONS, that CSC or its legal counsel produced or otherwise provided to YOU.

**REQUEST NO. 46**

All COMMUNICATIONS between YOU and CSC or CSC'S legal counsel RELATING TO:

(a) TWYNHAM;
(b) PULIER;
(c) HUNTER;
(d) WALDRON;
(e) THIEL;
(f) Contracts between SERVICEMESH and CBA;
(g) Contracts between SERVICEMESH and SWISSCOM;
(h) ACE;
(i) Payments by ACE;
(j) This action; or
(k) Any of the allegations in the COMPLAINT, FAC or SAC.

//
//

- **14** -

**CLAIMANT BRADLEY TWYNHAM'S REQUEST FOR PRODUCTION TO PLAINTIFF U.S.A., SET ONE**
187470.5
Exhibit A

**REQUEST NO. 47**

All DOCUMENTS identified in response to any Interrogatory in Claimant Bradley Twynham's Interrogatories to Plaintiff United States of America, Set One, served concurrently herewith.

DATED: February 17, 2016	ISAACS | FRIEDBERG LLP

_____
JEFFREY B. ISAACS, ESQ.
OREN ROSENTHAL, ESQ.

Attorneys for Claimants
Bradley Twynham and Mariel Twynham

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles. I am over the age of 18 and not a party to the within action; my business address is: Isaacs | Friedberg LLP, 555 South Flower Street, Suite 4250, Los Angeles, California 90071.

On **February 17, 2016**, I served a copy of the following document(s) described as

**CLAIMANT BRADLEY TWYNHAM'S REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF UNITED STATES OF AMERICA, SET ONE**

on the interested party(ies) in this action as follows:

[ ] **BY MAIL:** By placing a true copy thereof enclosed in a sealed envelope(s) addressed as below and placing each for collection and mailing on that date following ordinary business practices. I am "readily familiar" with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service in Los Angeles, California, in a sealed envelope with postage fully prepaid.

[ ] **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed as below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

[X] **BY MESSENGER SERVICE:** I served the documents by placing them in an envelope or package addressed to the persons listed below and providing them to a professional messenger service for service.

[ ] **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

[X] **STATE:** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **February 17, 2016**, at Los Angeles, California.

_____
Lynn Leiro

188667.1                                                                                              Exhibit A

## SERVICE LIST

**JONATHAN GALATZAN**
**Assistant United States Attorney**
**Asset Forfeiture Section**
Federal Courthouse, 14th Floor
312 North Spring Street
Los Angeles, California 90012

188667.1                                            Exhibit A